

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00037-CV

---

**IN THE ESTATE OF FRANCES VOGELSANG WALZEL, DECEASED**

---

On Appeal from the 20th District Court
Milam County, Texas[1]
Trial Court No. CV41233, Honorable James Lee Carroll, Presiding

---

October 2, 2023

## MEMORANDUM OPINION

Before PARKER and DOSS and YARBROUGH, JJ.

In this will contest, appellant, Amy Walzel, appeals from an order granting summary judgment in favor of appellees, Franci Denio and Kyle Walzel.  We affirm in part and reverse and remand in part.

---

[1] This appeal was transferred to this Court from the Third Court of Appeals by docket equalization order of the Supreme Court of Texas.  *See* TEX. GOV'T CODE ANN. § 73.001.

## BACKGROUND

Amy Walzel, Franci Denio, and Kyle Walzel are children of the decedent, Frances Vogelsang Walzel.[2] Frances was married to Joseph from 1969 until his death in 2010. During their marriage, Frances and Joseph acquired extensive real property in Milam County. Joseph died intestate, and Frances and her children acquired undivided interests in the couple's real property. Frances died on February 23, 2021, leaving a self-proving will dated March 30, 2020, which bequeathed her entire estate to her children, Curtis, Kyle, Joel, Franci, and Amy. The will devised a ninety-two-acre tract of land to Amy, but the devise is conditioned on Amy conveying her undivided interest in her grandmother's land (eighty-three acres) to Joel in order to obtain any portion of Frances's estate. The will contained an in terrorem, or forfeiture, clause that applies to any beneficiary who "directly or indirectly, contests or attacks" the will or any of its provisions.

On March 9, 2021, Franci and Kyle, as co-independent executors, filed an application to probate the will. Before there was a hearing to prove up the will, Amy filed an answer and petition contesting the application, alleging that Frances lacked testamentary capacity when she executed the will and that the will was the result of Franci's undue influence over Frances. After the probate was transferred to district court, Franci and Kyle filed an answer and counterclaim, wherein they sought a declaratory judgment that Amy's contest invoked the in terrorem clause in the will.

Franci and Kyle filed traditional and no-evidence motions for summary judgment. In their traditional motion, they attached the self-proved will and alleged a prima facie

---

[2] To aid in clarity, we will refer to the deceased as Frances and to her children by their first names.

case on the validity of the will and testamentary capacity. The no-evidence grounds alleged that Amy did not have any evidence to prove undue influence or to establish just cause and good faith in bringing and maintaining the will contest. Amy filed a response and attached summary judgment evidence. At a hearing on the summary judgment motions, the trial court considered Franci's and Kyle's objections and motion to strike portions of Amy's summary judgment evidence and undisclosed legal theories. The motion to strike was granted. The trial court granted the motion for summary judgment, admitted the will to probate, issued letters testamentary to Franci and Kyle, and granted the declaratory relief. Amy timely filed this appeal.

## ANALYSIS

Issue One: Exclusion of Medical Records

In her first issue, Amy contends the trial court abused its discretion in striking medical records[3] from her response to the motion for summary judgment. We review a trial court's evidentiary ruling for an abuse of discretion. *Horizon/CMS Healthcare Corp. v. Auld,* 34 S.W.3d 887, 906 (Tex. 2000). A trial court abuses its discretion if its decision is arbitrary, unreasonable, and without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.,* 701 S.W.2d 238, 241−42 (Tex. 1985). Unless the trial judge's erroneous evidentiary ruling probably caused the rendition of an improper judgment, we will not reverse the ruling. *Auld,* 34 S.W.3d at 906.

---

[3] The trial court also sustained a hearsay objection to a portion of Amy's affidavit and an objection to the death certificate as not being timely disclosed. Amy does not complain of the trial court's exclusion of this evidence on appeal.

Rule 193.6 of the Texas Rules of Civil Procedure provides that a party who fails to make a discovery response in a timely manner may not introduce in evidence the untimely disclosed material or information unless the court finds good cause or lack of unfair surprise. TEX. R. CIV. P. 193.6(a). Evidentiary exclusion under Rule 193.6 is applicable in summary judgment proceedings. *Fort Brown Villas III Condo. Ass'n, Inc. v. Gillenwater*, 285 S.W.3d 879, 881−82 (Tex. 2009).

In this case, Amy filed her will contest in March of 2021. The parties entered into a Rule 11 agreement providing, in part, the "'discovery period' under the TRCP began April 18, 2021." When, as here, a suit is not governed by a Level I or Level III discovery control plan, discovery must be conducted in accordance with a Level II discovery plan. TEX. R. CIV. P. 190.3(a). As applicable, Rule 190.3 states that discovery ends "nine months after the earlier of the date of the first oral deposition or the due date of the first response to written discovery." TEX. R. CIV. P. 190.3(b)(1)(B)(ii). Thus, discovery in this case ended on January 18, 2022, nine months after the agreed discovery period began.

The motion for summary judgment was filed on February 3, 2022, after the discovery period closed on January 18. Amy waited until four months after the discovery period ended to subpoena Frances's medical records. On May 19, Amy filed amended disclosures and produced some medical records. Amy filed her response to the motion for summary judgment on July 1, and she attached medical records and a business records affidavit from Baylor Scott & White Hospital.

The day before the summary judgment hearing, Franci and Kyle filed their objections and motion to strike contending that the medical records were not timely

4

disclosed under Texas Rule of Civil Procedure 194.2(b)(6), and requested the records be excluded pursuant to Rule 193.6. As a part of their motion, Franci and Kyle pointed out that Amy had not identified any documents in her initial disclosures; she did not seek leave of court to reopen discovery; there was no showing of good cause to justify a delay of fourteen months to produce the records; and had Amy timely disclosed her intention to use medical records, they would have retained an expert who is qualified to render opinions regarding medical records.

The hearing on the motion for summary judgment was held on July 8.[4] In a response to the objections and motion to strike evidence filed on July 11, Amy argued: (1) the motion to strike was untimely because it was filed less than three days before the hearing; (2) the trial court was permitted to suspend the discovery deadline under the Thirty-Eighth COVID-19 emergency orders such that the production of the medical records was timely when the records were served on June 7, 2022; and (3) there was no surprise because Franci and Kyle possessed the records a month and a half prior to the hearing on the summary judgment.

Texas Rule of Civil Procedure 166a, which establishes the procedure for summary judgment proceedings, does not impose a deadline by which a movant must file its reply, including objections, to a nonmovant's response. *See* TEX. R. CIV. P. 166a(c); *Martin v. Estates of Russell Creek Homeowners Ass'n*, 251 S.W.3d 899, 903 n.2 (Tex. App.—Dallas 2008, no pet.); *Shelton v. Sargent,* 144 S.W.3d 113, 119 (Tex. App.—Fort Worth

---

[4] The motion for summary judgment was originally set for hearing on May 27, 2022, but the presiding judge recused himself nine days before the hearing.

2004, pet. denied). As such, Franci's and Kyle's objections were timely. Moreover, while Amy recognizes the authority of the trial court to modify deadlines under the COVID-19 emergency orders, she did not file a motion to modify or suspend any deadlines allowed under the emergency orders. *See Ramos v. Veracruz Foods, LLC,* No. 02-22-00116-CV, 2022 Tex. App. LEXIS 9545, at \*13 (Tex. App.—Fort Worth Dec. 29, 2022, no pet.) (mem. op.) (trial courts are permitted to extend deadlines under an emergency order, but there is no requirement to do so). Finally, Amy cited no reason that she could not have obtained the medical records during the nine-month discovery period. The trial court could have concluded that Amy had been afforded adequate time to conduct formal discovery and that her last-minute production of previously undisclosed medical records posed an unfair surprise to Franci and Kyle, who would be unable to respond with a medical expert at this late juncture.

We find no abused discretion in striking the medical records that were not identified or produced until four months after the close of discovery. *See* TEX. R. CIV. P. 193.6; *Carbonara v. Tex. Stadium Corp.,* 244 S.W.3d 651, 658 (Tex. App.—Dallas 2008, no pet.). Moreover, Amy does not argue that the order granting summary judgment turned on the particular evidence admitted or excluded. *See* TEX. R. APP. P. 44.1(a); *Main v. Royall,* 348 S.W.3d 381, 388 (Tex. App.—Dallas 2011, no pet.). We overrule Amy's first issue.[5]

---

[5] In her appellate brief, Amy contends that Rule 194.2 does not require her to disclose the medical records. The record does not reflect that Amy made this argument to the trial court. Therefore, it is not preserved. *See* TEX. R. APP. P. 33.1(a)(1); *Cmty. Initiatives, Inc. v. Chase Bank,* 153 S.W.3d 270, 280 (Tex. App.—El Paso 2004, no pet.).

6

Summary Judgment Standard of Review

We review a trial court's ruling on a summary judgment motion under a de novo standard of review. *Valence Operating Co. v. Dorsett,* 164 S.W.3d 656, 661 (Tex. 2005). In conducting the review, we take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in favor of the nonmovant. *Id.* To prevail on a traditional motion for summary judgment, the moving party must prove that "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law on the issues expressly set out in the motion." TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.,* 690 S.W.2d 546, 548 (Tex. 1985).

A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 750−51 (Tex. 2003). A no-evidence summary judgment will be sustained when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *Id.* at 751. We may not consider any summary judgment evidence that was struck by the trial court. *See U.S. Fire Ins. Co. v. Lynd Co.,* 399 S.W.3d 206, 215 (Tex. App.—San Antonio 2012, pet. denied).

Issue Two: Testamentary Capacity

In her second issue, Amy challenges whether traditional summary judgment was proper on the issue of testamentary capacity.[6] She contends that she produced more than a scintilla of probative evidence to raise a genuine issue of material fact as to whether Frances lacked testamentary capacity to execute the will.

Before a will is admitted to probate, the will's proponent bears the burden of establishing that it was properly executed and that the testator had testamentary capacity at the time of execution. *See Schindler v. Schindler,* 119 S.W.3d 923, 931 (Tex. App.—Dallas 2003, pet. denied); *Guthrie v. Suiter,* 934 S.W.2d 820, 829 (Tex. App.—Houston [1st Dist.] 1996, no writ). The proponent of the will may make a prima facie case on these issues by introducing a self-proving will into evidence. *See* TEX. EST. CODE ANN. §§ 251.101(1) (providing that self-proved will is will with attached or annexed self-proving affidavit subscribed and sworn to by testator and witnesses); .104 (setting out requirements for self-proving affidavit); *In re Estate of Danford,* 550 S.W.3d 275, 281 (Tex. App.—Houston [14th Dist.] 2018, no pet.); *In re Estate of Arrington*, 365 S.W.3d 463, 467 (Tex. App.—Houston [1st Dist.] 2012, no pet.) ("A self-proved will is prima facie evidence that the will was properly executed."). The burden of producing evidence negating testamentary capacity then shifts to the will's opponent, although the burden of

---

[6] In this case, the trial court granted Franci's and Kyle's traditional motion for summary judgment on testamentary capacity, and a no-evidence motion for summary judgment on undue influence and the will's in terrorem clause. Amy does not raise any issue on appeal regarding her claim of undue influence. As such, Amy has waived any error in the summary judgment as to undue influence. *See In the Estate of Coleman,* 360 S.W.3d 606, 611–12 (Tex. App.—El Paso 2011, no pet.).

persuasion always remains with the proponent. *Bracewell v. Bracewell,* 20 S.W.3d 14, 26 (Tex. App—Houston [14th Dist.] 2000, no pet.); *Guthrie,* 934 S.W.2d at 829.

In their traditional motion for summary judgment, Franci and Kyle alleged that, after Joseph's death intestate in 2010, Frances and her children owned undivided interests in the couple's real estate. As a part of her estate planning, Frances wanted to ensure that her children owned "more or less equal shares of land." In order to effectuate her estate planning, she hired attorney Michelle Lehmkuhl to draft her will, and it was completed in January of 2020. Frances executed the will on March 30, 2020. In her will, Frances devised a ninety-two-acre tract of land to Amy, but that devise is conditioned on Amy conveying her undivided interest in a separate eighty-three-acre tract to Joel. Franci and Kyle further allege as to testamentary capacity that Amy was not present when Frances executed her will and "those who were present have stated that [Frances] was mentally sound on that day." As summary judgment proof, Franci and Kyle attached the will and the self-proving affidavit[7] to their motion along with an unsworn declaration from Kyle. Franci and Kyle point to the affidavits of the two attesting witnesses who observed Frances execute her will that the witnesses believed Frances to be "of sound mind" and Frances told them "the instrument is her Last Will and Testament, and that she had willingly made and executed it as her free act."

In her response, Amy relies on her affidavit and avers that the following evidence raises a fact question about Frances's lack of testamentary capacity: during the last five

---

[7] The will and affidavit in this case meet the statutory requirements for a self-proving will. *See* TEX. EST. CODE ANN. §§ 251.101 (defining a self-proved will), .104 (requirements for self-proving affidavit).

years of her life, Frances had become physically frail, with each year becoming progressively worse; since 2016, Frances had multiple falls and a major fall in 2016 required hospitalization; in "early 2020" at Frances's apartment, Frances was "sitting in her recliner in the dark, unable to get up . . . [and] the two urinary pads in her chair were drenched, her pants were soaked, and urine [was puddled] on the floor"; in October of 2020, Amy took Frances for a spa day and Frances was "extremely frail," would easily "space out," and could not hold a conversation; in January of 2021, Frances was admitted to the hospital for "altered mental state" and she could not remember how she fell or how she arrived at the hospital.

Franci and Kyle met their initial summary judgment burden to establish a "prima facie case" that Frances had testamentary capacity on March 30, 2020, by introducing the self-proving will into evidence as summary judgment proof. *See In re Estate of Danford,* 550 S.W.3d at 281; *In re Estate of Coleman*, 360 S.W.3d 606, 611−12 (Tex. App.—El Paso 2011, no pet.). A "prima facie case" is a legal term of art that specifically means the "minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true." *In re Lipsky,* 460 S.W.3d 579, 590 (Tex. 2015). It refers to "evidence sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Id.* Because the will was self-proved, the burden of production shifted to Amy to produce some evidence to contradict or negate the existence of testamentary capacity.

In this case, the will was signed on March 30, 2020. Amy presented no direct evidence that Frances lacked testamentary capacity on March 30, 2020, or otherwise controverted the evidence from the attesting witnesses that Frances was "of sound mind,"

10

executed the will as her "last will and testament," and requested they witness the will.  If there is no direct evidence indicating that the testator lacked testamentary capacity on the date of execution, "[e]vidence of incompetency at other times can be used to establish incompetency on the day the will was executed . . . ."  *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983).  Thus, the testator's mental condition on the date of execution may be inferred "from lay opinion testimony based upon the witnesses' observations of [the] testator's conduct either prior or subsequent to the execution."  *In re Estate of Graham,* 69 S.W.3d 598, 606 (Tex. App.—Corpus Christi–Edinburg 2001, no pet.).  However, evidence of incapacity at other times only has probative force if that evidence demonstrates that the testator's condition persists and has some probability of being the same condition that existed at the time the will was made.  *Lee v. Lee,* 424 S.W.2d 609, 611 (Tex. 1968).  To successfully challenge testamentary capacity with circumstantial evidence from time periods other than the day on which the will was executed, the will contestant must establish (1) the evidence offered indicates a lack of testamentary capacity; (2) the evidence is probative of the testator's capacity (or lack thereof) on the day the will was executed; and (3) the evidence provided is of a satisfactory and convincing character.  *In re Estate of Graham,* 69 S.W.3d at 606.

Here, Amy produced evidence limited to Frances's physical condition in 2016 and early 2020, before Frances executed her will, and October of 2020 and January of 2021, seven and ten months after she executed her will.  Amy's evidence does not address Frances's mental state before she executed the will and does not indicate that Frances suffered from a persistent condition that affected her competency at the time she executed her will.  *See Cruz v. Prado,* 239 S.W.2d 650, 651 (Tex. Civ. App.—San Antonio

11

1951, no writ) (evidence that testator was feeble, lost control of bowels, and had difficulty in sustaining a conversation was insufficient evidence of lack of testamentary capacity).

Amy's evidence failed to contradict Franci's and Kyle's evidence of testamentary capacity and was insufficient to raise a genuine issue of material fact. *Croucher,* 660 S.W.2d at 57. We conclude that, on this record, Franci and Kyle conclusively established entitlement to traditional summary judgment on the testamentary capacity issue. Accordingly, we overrule issue two.

Issue Three: In Terrorem Clause

Frances's will contained an in terrorem clause (also known as a no-contest clause) that stated:

> If any beneficiary or remainderman under this Will in any manner, directly or indirectly, contests or attacks this Will or any of its provisions, any share of interest in my estate or in the estate of the Trust established by this Will given to that contesting beneficiary or remainderman under this Will is revoked and shall be disposed of in the same manner provided herein as if that contesting beneficiary or remainderman had predeceased me without issue.

Franci and Kyle moved for summary judgment on their request for declaratory relief seeking a determination that Amy violated the in terrorem clause by contesting the will and was barred from recovering under the will. They contend they are entitled to summary judgment as a matter of law on the grounds that Amy has no evidence that just cause existed for bringing the action or that she maintained the action in good faith. In her third issue, Amy contends that she produced more than a scintilla of probative

12

evidence to raise a genuine issue of material fact as to whether she met the statutory exception to the in terrorem clause.

An in terrorem clause in a will typically makes the gift conditional on the beneficiary not challenging or disputing the validity of the will. *Di Portanova v. Monroe,* 402 S.W.3d 711, 715 (Tex. App.—Houston [1st Dist.] 2012, no pet). In terrorem clauses allow the intent of the testatrix to be given full effect and seek to avoid vexatious litigation among family members. *Lesikar v. Moon,* 237 S.W.3d 361, 369−70 (Tex. App.—Houston [14th Dist.] 2007, pet. denied). We narrowly construe in terrorem clauses to avoid forfeiture. *Di Portanova,* 402 S.W.3d at 716. A lawsuit challenging the testamentary capacity of the testatrix is a type of contest that will result in forfeiture. *See In re Estate of Hamill*, 866 S.W.2d 339, 343 (Tex. App.—Amarillo 1993, no pet.). Under Texas law, in terrorem clauses are enforceable unless the contestant shows that "just cause existed for bringing the action and the action was brought and maintained in good faith." TEX. EST. CODE ANN. § 254.005. For good faith and just cause to be an issue, there must necessarily have been a contest contrary to the provision of the forfeiture clause. *See In re Estate of Newbill,* 781 S.W.2d 727, 730 (Tex. App.—Amarillo 1989, no writ.). Here, we conclude that Amy's suit is an attempt to set aside Frances's will, which is sufficient to trigger the will's in terrorem clause. *Ferguson v. Ferguson*, 111 S.W.3d 589, 598−99 (Tex. App.—Fort Worth 2003, pet. denied) (the determination of whether a forfeiture clause is triggered, i.e., whether the contesting party's actions fall within the terms of the forfeiture clause, is a question of law). However, Franci and Kyle were not entitled to summary judgment if Amy raised a genuine issue of material fact that she had just cause to bring suit and brought suit in good faith.

13

"Just cause" and "good faith" are not defined by the Estates Code, and no Texas case has defined these terms in the context of an in terrorem clause. However, the case law has defined these terms in relation to an award of attorney's fees in regard to the probate of a will. *See* TEX. EST. CODE ANN. § 352.052(a) (awarding attorney's fees from the estate to a person designated as executor or administrator who defends or prosecutes a proceeding to have the will admitted to probate and acts in "good faith and with just cause"). In this context, "good faith" means an action prompted by honesty of intention or a reasonable belief that the action was probably correct. *In re Estate of Kam,* 484 S.W.3d 642, 654−55 (Tex. App.—El Paso 2016, pet. denied). The issue of good faith is usually a question of fact, to be determined under all the circumstances of the case*. Id.* at 654; *Harkins v. Crews,* 907 S.W.2d 51, 62 (Tex. App.—San Antonio 1995, writ denied). A party acts "with just cause" when her actions are based on reasonable grounds and there is a fair and honest reason for her actions. *In re Estate of Kam,* 484 S.W.3d at 654.

In her affidavit, Amy gives a history of the land owned by her family and her parents' expressed intentions that she and her siblings receive equal portions in their estates. Her father Joseph died before he completed any transfer of his property. After his death, each sibling received a parcel of land, but Amy's parcel was located closer to Franci's home, "while [her] siblings' land was miles away from the home, and [Amy's] parcel was larger than [her] siblings." Further, because Joseph died intestate, Amy and her siblings received undivided interests in their grandmother's land. Amy and her siblings could not agree how to divide their grandmother's land. On numerous occasions, Franci requested Amy to deed her interest in her grandmother's land to her brother Joel, but Amy refused. Another time, Franci told Amy that Frances was going to donate all the

land to the local church if Amy did not sign over her rights to her grandmother's land. A provision in Frances's will devises a ninety-two-acre tract of land to Amy, but the devise is conditioned on Amy conveying her undivided interest in her grandmother's land (eighty-three acres) to her brother Joel in order to obtain any portion of Frances's estate. This conditional interest in Frances's will was surprising to Amy because that was not the plan her parents had discussed "with all of us many times" and the provision was the same provision Franci insisted Amy sign prior to Frances creating her will. The will also refers to Amy by her former married name, "Kaase," even though she has not used that name in more than ten years. Amy's affidavit also addresses Frances's declining physical and mental health from 2016 until her death in 2021: Frances was hospitalized for multiple falls; she became increasingly frail; she was unable to hold a conversation; and shortly before her death she was admitted to the hospital "for altered mental state," and she could not remember how she fell or how she arrived at the hospital.

In determining whether a fact issue precludes summary judgment, "we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor." *See Valence Operating Co.,* 164 S.W.3d at 661. Taking Amy's evidence as true, there is sufficient evidence from which a reasonable and fair-minded person could believe Amy had a reasonable belief that Frances lacked testamentary capacity, and that the will contest was brought and maintained on reasonable grounds. As such, Amy has raised more than a scintilla of probative evidence to raise a genuine issue of material fact as to whether she met the statutory exception to the in terrorem clause. *See Lippert v. Eldridge*, No. 03-15-00643-CV, 2016 Tex. App. LEXIS 11086 at *11 (Tex. App.—Austin Oct. 12, 2016, no pet.)

(issues of ordinary care, good faith, and reasonable belief are generally fact questions to be resolved by the factfinder and not on summary judgment unless they are conclusively established). The evidence is not conclusive here. Even though a factfinder may ultimately find that Amy acted in bad faith or failed to prosecute her suit with just cause, it is the factfinder's responsibility to assess credibility and weigh the evidence. *Perdue v. Patten Corp.,* 142 S.W.3d 596, 606 (Tex. App.—Austin 2004, no pet.). Accordingly, we conclude the trial court erred in granting the declaratory relief and attorney's fees. We sustain Amy's third issue and remand the determination of the declaratory judgment action to the trial court.

## CONCLUSION

We overrule Amy's first two issues and affirm the trial court's judgment admitting the will to probate. We sustain Amy's third issue and reverse the trial court's judgment awarding declaratory relief and attorney's fees and remand for further proceedings.

Judy C. Parker
Justice