# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 2, 2022

Lyle W. Cayce
Clerk

No. 21-11076

Alberto Ovalle,

*Plaintiff—Appellant*,

*versus*

United Rentals North America, Incorporated,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 2:18-CV-211

Before Smith, Wiener, and Southwick, *Circuit Judges*.
Per Curiam:*

Alberto Ovalle, a mechanic, brought various negligence claims against his employer after he slipped and fell on rainwater that seeped into his work bay. The district court granted his employer summary judgment on all claims. We AFFIRM.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 21-11076

## FACTUAL AND PROCEDURAL BACKGROUND

Alberto Ovalle worked as a mechanic for United Rentals North America, Inc. in its Canyon, Texas, facility. He was assigned to two work bays and was the only field technician who worked in those areas. To enter the work bays, Ovalle had two entrance options — a door near the front office or a side door that opened directly into the work bay. The side door entrance did not have a light switch near the door. When entering that way, Ovalle needed to follow yellow tape on the floor to reach the other side of the work bay to switch on the light.

We rely on Ovalle's evidence for our factual recitation. Over a ten-month period, Ovalle observed on two occasions that water pooled on the floor of the work bay when it was raining. Ovalle used a squeegee, a mop, and cleaning products to clear the water out of the work bay in those instances. He also informed Art Silva, whom he considered his supervisor, that water sometimes pooled in the bay.

On March 28, 2017, Ovalle entered his work bay as usual through the side door. It was raining. He took nine steps into the work bay, toward the light switch, and then slipped on rainwater that had seeped into the work bay. Without the light on, it was too dark for Ovalle to see the rain puddle. He also was unable to follow the yellow tape because equipment was in his pathway. He got up from the ground and felt a sharp pain. Ovalle eventually turned on the light but still felt pain, so he reported the incident to the United Rentals branch manager.

In November 2018, Ovalle sued United Rentals in the United States District Court for the Northern District of Texas. Asserting diversity jurisdiction, he brought the following negligence claims:

> [1] failing to furnish a reasonably safe place to work; [2] failing
> to warn Plaintiff of hazards of his employment not commonly

known or already appreciated; [3] failing to properly supervise, monitor, and train its employees regarding the proper manner in which to inspect and make the premises reasonably safe; [4] failing to furnish reasonably safe instrumentalities with which to work; [5] failing to provide or enforce safety policies and regulations regarding safe, adequate lighting and preventing slips from liquids on the floor; [6] failing to adequately warn of or make safe dangers or conditions of which Defendant had actual or constructive knowledge; [7] failing to reasonably inspect the premises for concealed, unreasonably dangerous conditions and failing to warn of or make safe such conditions; [8] failing to keep the premises in a reasonably safe condition; [9] failing to use ordinary care as a reasonable person would under the same or similar circumstances; and [10] such additional acts of negligence, which will be established as the case progresses.

United Rentals moved for summary judgment on all claims. On July 16, 2021, the district court granted the motion and dismissed the suit. Ovalle timely appealed after the district court denied reconsideration.

## DISCUSSION

We review a grant of summary judgment *de novo*. *Molina v. Home Depot USA, Inc.*, 20 F.4th 166, 168 (5th Cir. 2021). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must view all facts and inferences "in the light most favorable to the nonmoving party." *Valderas v. City of Lubbock*, 937 F.3d 384, 388 (5th Cir. 2019). The court may not make credibility determinations or weigh the

No. 21-11076

evidence when deciding whether a dispute of material fact exists. *Sport Supply Grp., Inc. v. Columbia Cas. Co.*, 335 F.3d 453, 456 (5th Cir. 2003).

Ovalle first disputes the district court's classification of his failure-to-warn claim under Texas law. The court held that his claim against United Rentals for failure to warn him of the dangerous condition in the work bay was solely a premises-liability claim, not a premises-liability claim *and* a workplace-safety claim. That matters, Ovalle argues, because the court should have held that United Rentals had a workplace-safety duty to warn of the water in the work bay.

Under Texas law, an employee may bring the following negligence claims against an employer: (1) negligent-activity claims; (2) premises-liability claims; and (3) workplace-safety claims. *See Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193 (Tex. 2015). A plaintiff may not pursue both a negligent-activity and a premises-liability theory of recovery for a single injury that is based on a premises condition unless there is some ongoing activity that caused the plaintiff's injury in addition to the premises condition. *See Keetch v. Kroger Co.*, 845 S.W.2d 262, 264; *see also Austin*, 465 S.W.3d at 215 (discussing difference between premises-liability and negligent-activity theories).

Ovalle does not make a claim based on negligent activity. Thus, for Ovalle to succeed on his premises-liability claim, he must show evidence that his employer "fail[ed] to take measures to make the property safe." *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). Claims will be viewed in their true character regardless of how a plaintiff categorizes them. *United Scaffolding, Inc. v. Levine*, 537 S.W.3d 463, 480 (Tex. 2017).

Workplace-safety claims may be brought alongside premises-liability claims. *Austin*, 465 S.W.3d at 215–17. A workplace-safety theory of negligence is applicable when the employer-employee relationship gives rise

4

to additional duties such as "provid[ing] necessary equipment, training, or supervision." *Id.* The two negligence theories may coincide because the different relationships — landowner-invitee and employer-employee — create two different proximate causes and therefore require two different negligence theories to allow sufficient recovery. *Id.* at 216–17.

For example, an employee was allowed to pursue claims under both premises-liability and workplace-safety theories for an injury he sustained after he slipped and fell on a spill he was required to clean up without being provided the proper tools. *Id.* at 216.

> The fact that [the plaintiff] alleged that a condition of the premises proximately caused his injury does not preclude his allegation that [the employer's] negligent failure to provide the [s]pill [cleanup] system also caused his injury. If the only relationship between [the plaintiff] and [the employer] were that of landowner-invitee, the alleged facts could only give rise to a premises-liability claim.

*Id.*

We examine whether Ovalle has viable premises-liability or workplace-safety claims.

### I.    *Premises-liability claims*

An employer's and a landowner's duties to warn are coextensive: "While an employer's *liability* may differ from that of other landowners[,] . . . its premises-liability *duty* is the same as that owed by landowners to invitees generally." *Id.* at 202. That duty requires that employers maintain the relevant premises "in a reasonably safe condition." *Id.* at 217. That duty can be satisfied "by providing an adequate warning of concealed dangers of which they are or should be aware but which are not known to the employee." *Id.* Where a dangerous condition is "open and obvious or known to the invitee," the landowner has no duty, because the landowner is not in any

better position to discover the danger than the invitee. *Id.* at 203. This is true regardless of whether the landowner is an employer. *Id.* at 217.

Ovalle admitted he observed water pooling in the work bay when it rained on two prior occasions. He also knew the condition was dangerous, because he reported it to Silva. The district court concluded his awareness relieves United Rentals of any duty to warn Ovalle of the water under either a premises-liability or workplace-safety negligence theory. *See Austin*, 465 S.W.3d at 203. That was error, Ovalle argues, because Texas law recognizes a necessary-use exception. "[L]andowners have no duty to protect or warn such persons when they are aware of the risks and *could have avoided them*." *Id.* at 208 (emphasis added). Consequently, even when an invitee is aware of the relevant risk, if "the landowner should have anticipated that the invitee is unable to take measures to avoid the risk," then the duty to make the premises safe remains. *Id.*

This theory of liability depends on the invitee's ability to avoid the known risk. The record shows Ovalle had access to a different door which would have allowed him to turn on the light before encountering the water. Indeed, during his deposition he agreed that "if [he] wanted to, [he was] allowed to walk through the front door of the United Rentals facility."

Ovalle responds that a fact issue still prevents summary judgment. In his deposition, Ovalle explained he was told to enter the side door and, indeed, had exclusively used the side door. The district court rejected this testimony, finding it constituted the equivalent of a "sham affidavit." That finding was based on events during the deposition. Ovalle first stated in response to his own counsel's questioning that "[s]ometimes I would" use the front entrance but "[m]ost of the time" used the side door. Counsel repeatedly asked about which door he used. Finally, opposing counsel objected, saying the question about what door was used had been asked "like

five times." Almost immediately after the objection, Ovalle's counsel asked for a restroom break. After the break, Ovalle again answered the question about the doors he used by saying he "always" used the side door and that it was the door he was "authorized" to use. The district court considered the events of the deposition to confirm that a dispute of fact was "manufacture[d]" and the dispute could be ignored by the court.

The sham-affidavit doctrine applies when a plaintiff introduces an affidavit that conflicts with earlier testimony, such as in a deposition. *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495-96 (5th Cir. 1996). A district court may refuse to consider such an affidavit if the statements made in the affidavit "are so markedly inconsistent with a prior statement as to constitute an obvious sham." *Winzer v. Kaufman Cnty.*, 916 F.3d 464, 472 (5th Cir. 2019) (quotation marks and citation omitted).

We have not discovered caselaw applying the sham-affidavit concept to an internal inconsistency within a single deposition testimony. Ovalle's contradiction is distinguishable from the kind ordinarily at issue in sham-affidavit cases. *See Seigler v. Wal-Mart Stores Tex., L.L.C.*, 30 F.4th 472, 477 (5th Cir. 2022) (describing the issue as inconsistency with "*prior* testimony" (emphasis added)). Instead of contradicting himself after an initial testimony, he contradicted himself within the same testimony. Generally, inconsistency within the same testimony would be an issue of credibility for the trier of fact. *See Dibidale of La., Inc. v. Am. Bank & Tr. Co.*, 916 F.2d 300, 307–08 (5th Cir. 1990). The one special feature here is that the inconsistency arose after counsel had an opportunity, but we do not know if it was used, to redirect the witness's answers.

We see no need to decide whether what occurred here fits within the reach of caselaw about sham affidavits. That is because Ovalle's deposition testimony did not meaningfully contradict or raise uncertainty as to whether

he had access to the front door. He conceded in his deposition that, if he wanted to, he could have used that door. Therefore, it did not matter if he decided actually to use the side entrance every day or only sometimes. The necessary-use exception is inapplicable.

Another one of Ovalle's arguments is based on the Texas Workers' Compensation Act ("TWCA"). Subscribing to the TWCA is optional for employers. Tex. Lab. Code § 406.033(a). If an employer does not subscribe, i.e., have workers' compensation insurance, and United Rentals did not, then there are certain defenses the employer may not raise when litigating an employee's negligence claim. *Id.* One of them is contributory negligence. *Id.* Regardless, "the employee [will still have] the burden of proving that the employer owed a duty." *Austin*, 465 S.W. at 200.

Ovalle's awareness of the risk is relevant to the existence of United Rentals' duty to warn. It is not a question of Ovalle's liability or possible negligence in the fall. *See Austin*, 465 S.W.3d at 202–03. Because "the TWCA's wavier of a nonsubscriber's defenses . . . has no bearing on our analysis of an employer's duty," it is proper to consider Ovalle's awareness of the risk to evaluate whether United Rentals had a duty to warn Ovalle of the water at all. *Id.* at 202. The grant of summary judgment here is thus consistent with United Rentals' non-subscriber status under the TWCA, and no genuine issues of fact remain as to Ovalle's premise liability claims.

There was no error in the grant of summary judgment on the claims based on premises liability.

## II.    *Workplace-safety claims*

We also examine Ovalle's claims brought under the workplace-safety negligence theory. He does not dispute the district court's classification of these remaining claims — that United Rentals failed to provide him with the necessary instrumentalities, training, supervision, and safety policies to

perform his job safely — as falling under a workplace-safety theory. Instead, he challenges the district court's conclusion that no genuine issue of material fact remains on these claims.

We begin with his claim that United Rentals failed to provide the necessary instrumentalities for Ovalle to perform his job safely. *See Kroger v. Elwood*, 197 S.W.3d 793, 794 (Tex. 2006). In Texas, an employer has a duty to provide *necessary* instrumentalities but not those that would be unnecessary for safe performance. *Id.* at 794–95. The employer also owes no duty where the employee is "doing the same character of work that he has always done" when there is no evidence that the work poses a threat of injury. *Werner v. Colwell*, 909 S.W.2d 866, 869 (Tex. 1995).

Ovalle had all the equipment necessary to address the risks of water seepage. He had access to the front door to avoid the rainwater he knew pooled in the work bay. He had cleaning supplies for spills he used successfully on multiple occasions. There was no need for United Rentals to provide more, because additional instrumentalities would be unnecessary for a safe job performance. *See Molina*, 20 F.4th at 169–70. For example, in *Elwood*, an employee was injured when a customer shut a car door on his hand while he was unloading groceries. *Elwood*, 197 S.W.3d at 794. The court held the employer had no duty to provide carts with wheel locks or additional personnel to assist because there was no evidence those extra measures would aid in the safe unloading of groceries. *Id.* at 795. Here, too, Ovalle has shown no evidence that additional instrumentalities were needed for him to enter the work bay and perform his job as a mechanic.

Moreover, Ovalle entered the work bay every day for ten months. Entering the work bay was neither an unusual task nor one that posed a threat of injury — he was "performing the same character of work" he and other mechanics would have always done, namely entering a work bay and being

aware of possible hazards. *See Austin*, 465 S.W.3d at 214 (quoting *Elwood*, 197 S.W.3d at 795). United Rentals did not breach its duty to provide additional instrumentalities to Ovalle.

Ovalle also alleges that United Rentals failed to provide sufficient training, supervision, and safety policies regarding water hazards. On Ovalle's failure-to-train claim, he alleges United Rentals failed to provide adequate training to handle the hazardous condition. "An employer is not an insurer of its employees' safety at work," but "an employer [still has] a duty to use ordinary care in providing a safe workplace." *Leitch v. Hornsby*, 935 S.W.2d 114, 117 (Tex. 1996). Where an employee's task does not require specialized training or is performed regularly without any special training or assistance, the employer does not have the duty to provide additional training. *See Elwood*, 197 S.W.3d at 794–95. Texas courts have held that "an employer has no duty to adopt safety rules where its business is neither complex nor hazardous or where the dangers incident to the work are obvious or are of common knowledge and fully understood by the employee." *National Convenience Stores Inc. v. Matherne*, 987 S.W.2d 145, 149 (Tex. App. — Houston [14th Dist.] 1999, no pet.); *accord Patino v. Complete Tire, Inc.*, 158 S.W.3d 655, 660 (Tex. App. — Dallas 2005, pet. denied).

United Rentals did not have a duty to provide training in addition to what it already provided for Ovalle to enter the work bay safely. He was a 25-year experienced mechanic. He did not need specialized training to know how to enter the work bay in order to avoid slipping on water. Texas courts have held that "an employer's duty to instruct applies to an inexperienced employee, but not to one who is experienced in the work he is assigned." *Patino*, 158 S.W.3d at 661. The task of entering the work bay also does not require specialized training and therefore does not show any need for further training. *See Elwood*, 197 S.W.3d at 794–95 (explaining that employee who alleged employer provided inadequate training did not succeed, because his

job was neither dangerous nor specialized).  Ovalle also was aware of the condition of the work bay because  he reported it to Silva.  The danger was commonly known and open and obvious, eliminating any need for additional instruction.  *See National Convenience Stores Inc.*, 987 S.W.2d at 149.  United Rentals therefore did not breach its duty to provide adequate training to Ovalle.

Ovalle also argues the district court erred in granting summary judgment on his claim for negligent supervision, because there was a "complete lack of supervision" and "oversight" over the building.  He argues Silva was insufficiently trained because he was not supervising the building and also did not report the water as a dangerous condition.  "To establish a claim for negligent supervision, a plaintiff must show that an employer's failure to supervise its employees caused his injuries."  *Dangerfield v. Ormsby*, 264 S.W.3d 904, 913 (Tex. App. — Fort Worth 2008, no pet.).

Even though Ovalle couches this allegation as a workplace-safety claim of negligent supervision, his allegation that there was negligent supervision *over the building* sounds in the duty of a landowner or employer to warn of a dangerous condition.  *See Austin*, 465 S.W.3d at 217 (explaining employer and landowner must maintain premises in a reasonably safe condition).  "Creative pleading does not change the nature of a claim."  *Sampson v. Univ. of Tex. at Austin*, 500 S.W.3d 380, 386 (Tex. 2016).  When his negligent-supervision claim is considered as its true nature — that is, a failure-to-warn of a premises-condition claim — this claim also fails for the reasons discussed earlier that Ovalle's awareness of the spill relieves United Rentals of its duty to warn Ovalle of the water.

Ovalle finally claims that United Rentals should have adopted additional safety policies to prevent his injury.  Similar to his failure-to-train

claim, in Texas, an employer "has no duty to adopt safety rules where its business is neither complex nor hazardous or where the dangers . . . are obvious to the employee." *See National Convenience Stores Inc.*, 987 S.W.2d at 149. Again, Ovalle was not engaged in a complex or hazardous activity when entering the work bay, considering he had an alternative front entrance and cleaning supplies, and importantly, he was aware rainwater pooled in the work bay.

The district court did not err in granting summary judgment on Ovalle's workplace-safety claims.

AFFIRMED.